## HEARD NOVEMBER TERM, 1876.

## STATE, *ex rel.* WALLACE, *vs.* HAYNE AND MACKEY.

The power of the Supreme Court in issuing writs of injunction, *mandamus, quo warranto* and *habeas corpus* is not limited by the concluding term of Section 4, Article IV, of the Constitution, expressed in these words: "As may be necessary to give it a general supervisory control of all other Courts in the State," but such term qualifies only the immediately preceding term "and such other original remedial writs."

The Supreme Court has jurisdiction, by *mandamus*, over the executive officers of the State, as, for instance, the Secretary of State; and may by such writ supervise, control and direct their action.

The House of Representatives of the State consists, under the Constitution, of one hundred and twenty-four members, and it requires a majority of that number, that is to say, sixty-three members, at the least, to be present to form a quorum for the prosecution of business.

The duty of the State Board of Canvassers in ascertaining who have been elected members of the House of Representatives is purely ministerial,—they have only to add up the number of votes cast for each candidate, and to those having the majority certificates should be given entitling them to seats in the House, and it remains then, if the seats are contested, for the House itself to decide upon the validity of the election.

A certificate from the Secretary of State is not the only evidence that may be adduced showing that a candidate received the highest number of votes, and is, therefore, entitled, at least *prima facie*, to a seat in the House. If the Secretary of State refuses to issue the certificate, the *prima facie* right to the seat may be shown by a return of the State Board of Canvassers or by the statements of the County Board of Canvassers.

The Speaker of an illegal and unconstitutional body claiming to be the House of Representatives is a mere private citizen, against whom a writ of *mandamus* cannot issue.

Can *mandamus* issue to compel the Secretary of State to deliver to the Speaker of the House of Representatives the returns of an election for Governor and Lieutenant Governor after he has parted with such returns to one who claimed to be Speaker of the House but whose claim has been judicially decided to be without legal foundation?

This was a petition to the Supreme Court entitled the "State of South Carolina *ex relatione* William H. Wallace, Speaker of the House of Representatives, *against* H. E. Hayne, as Secretary of State, and E. W. M. Mackey."

The allegations and prayer of the petition were as follows:

That a general election was held in said State on the 7th day of November, A. D. 1876, for the offices of Governor and Lieutenant Governor of said State; and upon such election the returns of the several Managers of Election were duly transmitted to the said H. E. Hayne, as Secretary of State, in accordance with the provisions of the Constitution and laws of said State.

And your petitioner further sheweth that the House of Representatives of the General Assembly convened in the city of Columbia on the fourth Tuesday in November, 1876, to wit, in Carolina Hall, in said city, the members thereof having been excluded by force of arms from the State House by the army of the United States, and, after convening, duly organized, elected your petitioner Speaker of the said House, and sent the proper and usual message to the Senate of the said State that said House was duly organized and ready to proceed to business.

That your petitioner, as Speaker, as aforesaid, thereupon demanded of the said H. E. Hayne, Secretary of State, the returns of the election for Governor and Lieutenant Governor, in the possession of the said Secretary of State, under Section 4, Article III, of the Constitution of said State; but the said Secretary of State refused to deliver the said returns to your petitioner, and still refuses so to do, and has unlawfully delivered said returns to one E. W. M. Mackey, claiming to be Speaker of a body claiming to be a House of Representatives, which is not legally elected or organized.

Wherefore, and inasmuch as your petitioner is without any other adequate remedy in the premises, your petitioner prays that a writ of *mandamus* may issue from this honorable Court, directed to the

said H. E. Hayne, as Secretary of State, and E. W. M. Mackey aforesaid, commanding and enjoining them forthwith to deliver to your petitioner, as the Speaker of the said House, the returns of the Managers of Election transmitted to him upon the said general election as aforesaid, and that your petitioner may have such other and further relief as may seem just and necessary.

The petition was verified by the petitioner, and on December the 2d, 1876, a rule was issued by the Court requiring the defendants Hayne and Mackey to show cause "on Monday, the 4th December, instant, why the prayer of the said suggestion and petition should not be granted."

The defendant Henry E. Hayne, for answer to the petition, said:

That before the filing of the petition in this Court, and before he had any notice of said proceedings, he had delivered to said E. W. M. Mackey the returns of the election which have been forwarded to him by the proper election officers of this State, in pursuance of Section 4, Article III, of the Constitution of this State; that before he so delivered said returns, the said Mackey had been elected Speaker of the House of Representatives of this State, and was then in the Speaker's chair and acting as such, and that he so delivered the same before any demand was made upon him by said Wallace, and before he pretended to have been elected; that he did refuse to deliver the same to said Wallace, because he could not do so, the same being then in the hands of said Mackey. He therefore says that said returns had, before the filing of said petition in this Court, gone beyond his control, and, therefore, he cannot now produce said returns or deliver them to said Wallace.

The defendant E. W. M. Mackey also answered the petition and said:

1. That this Court has no power or authority or jurisdiction to inquire into, hear or determine the matters and things alleged and put in issue in the petition of the relator.

That the House of Representatives of the State of South Carolina duly assembled in the hall of the House of Representatives, in the city of Columbia, the capital of said State, on the 28th day of November, A. D. 1876, pursuant to the Constitution, and pro-

ceeded to organize by the election of this respondent as Speaker thereof, and of A. O. Jones as Clerk thereof.

That, having been duly elected Speaker of said House of Representatives as aforesaid, the returns of the election for Governor held in said State on the 7th day of November, A. D. 1876, were delivered to this respondent by Hon. Henry E. Hayne, Secretary of State, pursuant to Section 4, Article III, of the Constitution, and he now holds said returns as Speaker of said House of Representatives, and for the purpose indicated in said Section 4, Article III, of the Constitution, and for no other purpose whatever. This respondent therefore says that this Court has no power, authority or jurisdiction to hear and determine the matters in issue in said petition, and he prays to be hence dismissed with his reasonable costs in this behalf sustained.

And for a further answer he, the said E. W. M. Mackey, said that he was, on the 7th day of November, 1876, duly and legally elected a member of the House of Representatives of this State, and is now in his place in said House, having been duly and legally qualified as such. And that heretofore, on the 28th day of November, 1876, the House of Representatives of said State did assemble in the hall of the House of Representatives, a constitutional quorum of the legally elected members of said House being present and answering to their names, and said House did then and there organize by the election of this respondent Speaker, and A. O. Jones, Esq., as Clerk, and did in all respects proceed to perfect its organization in conformity with the Constitution and laws of this State, and that said House has continued in session from day to day until the present time; and he has at all times since his said election continued to act as such Speaker.

And that the Senate and House of Representatives, by concurrent resolution, have appointed this 4th day of December, at 2 o'clock P. M., in the hall of the House of Representatives, as the time and place for opening, counting and publishing the returns of the election of Governor and Lieutenant Governor.

And this respondent further says that he was duly and legally elected such Speaker, and that said Wallace was not elected by a majority of votes of a majority of the House of Representatives who had been legally elected; that eight of the pretended members who acted and voted for said Wallace had not been legally elected and were not legal members of said House, which question has

been submitted to and decided by the legally-constituted House of Representatives of this State; and therefore he says that the pretended House, who pretended to act as a House, and who pretended to vote for said Wallace, was composed of fifty-six members and no more.

And this respondent having been duly elected Speaker of said House of Representatives, as aforesaid, the returns of the election for Governor held in said State on the 7th day of November, A. D. 1876, were delivered to this respondent by Hon. Henry E. Hayne, Secretary of State, pursuant to Section 4, Article III, of the Constitution, and he now holds said returns as Speaker of said House of Representatives, and for the purpose indicated in said Section 4, Article III, of the Constitution, and for no other purpose.

Wherefore this respondent says that this Court has no power, authority or jurisdiction to hear and determine the matters in issue in said petition, and he prays to be hence discharged with his reasonable costs in this behalf sustained.

To the answers of E. W. M. Mackey the following reply was filed by the relator:

And the relator alleges that he is entitled to the writ of *mandamus* prayed for, notwithstanding anything in the return of the respondents contained; for the relator alleges that the body of which respondent claims to be the duly-elected Speaker is not and never was a constitutional House of Representatives, inasmuch as said body, when assembled in the hall of the House of Representatives, as alleged, did not consist of 124 members chosen by ballot by the citizens of this State, and that a majority of a lawfully-constituted House of Representatives, constituting a legal quorum, viz., sixty-three members, did not assemble or organize, but, on the contrary, as relator is informed and believes, not more than fifty-nine members chosen by ballot (if so many) assembled in the said hall of the House of Representatives at the time alleged in the answer and proceeded to organize as pretended.

And the relator further says that he was elected Speaker by a majority of votes of a majority of the House of Representatives who had been duly elected, viz., by a majority of a legal quorum of the House of Representatives of 124 members; that is to say, sixty-five members, of which sixty-five members fifty-seven members

held, as evidences of their legal membership, certificates of the Secretary of State and of the Clerk of the Supreme Court, as hereinafter more particularly described, of the certified determination of the Board of Canvassers, and eight members, to wit, the members elect from the Counties of Laurens and Edgefield,—W. S. Allen, J. C. Sheppard, James Callison, T. E. Jennings and H. A. Shaw from Edgefield, and J. W. Watts, D. W. Anderson and J. B. Humbert from Laurens, who had been refused certificates by the Secretary of State,—held as evidences of their title certificates of the Clerk of the Court issued in accordance with the judgment of the Supreme Court on the petition in *mandamus* in the case entitled " The State, *ex relatione* R. M. Sims *et al., vs.* H. E. Hayne, Chairman, *et al.,* the Board of State Canvassers, and H. E. Hayne, Secretary of State."

All of which the relator is willing and ready to verify. Wherefore he prays judgment, &c.

To the answer of H. E. Hayne the relator also filed a reply as follows:

The relator traverses the return of H. E. Hayne as Secretary of State and says: That so much thereof as alleges that said Mackey has ever been elected Speaker of the House of Representatives of the General Assembly of the State is untrue, and denies the same, and craves leave to refer, in regard thereto, to his traverse of the return of E. W. M. Mackey herein, and to make the same a part of this traverse as fully as if herein set forth. All of which the relator is ready and willing to verify. Wherefore the relator prays judgment.

Each of the defendants filed an answer to the reply of the relator, in which he denied each and every averment contained in the reply, and said:

That the pretended certificates issued to the persons named in said reply were issued by the Clerk of this Court without any order of this Court authorizing or directing them to be issued, and without any authority of law; that the only power or authority under or by virtue of which the certificates could have been issued is the Secretary of State, in pursuance of the decision and direction of the State Board of Canvassers; and therefore he says that said certificates are illegal and void.

The defendant Mackey also demurred to that portion of the reply which sets up and relies upon the certificates issued in pursuance of the order and decree of the Court for the reasons:

1st. That the Court had no jurisdiction of the said matter.

2d. Because the parties named in the reply were not parties to or in any way before the Court.

It was admitted that all the members, sixty-five in number, of the body which assembled as a House of Representatives on the 28th November, 1876, at Carolina Hall, in the city of Columbia, and which elected W. H. Wallace Speaker, held certificates from the Secretary of State, excepting the members claiming seats from the Counties of Edgefield, five in number, and Laurens, three in number, who held certificates of the Clerk of the Supreme Court, which were given in evidence.

The defendants offered no testimony.

*Conner* and *Gordon*, for relators.

*Corbin, Denny* and *Settle*, contra.

. December 6, 1876. Their Honors the Justices of the Court delivered, *seriatim*, oral opinions as follows:

Moses, C. J. This case is an application upon suggestion filed by leave of the Court in the name of the State, at the relation of William H. Wallace, claiming to be the Speaker of the House of Representatives of the State of South Carolina, against H. E. Hayne, as Secretary of State, and E. W. M. Mackey.

The petition sets forth that a general election was held in said State on the seventh day of November, A. D. 1876, for the offices of Governor and Lieutenant Governor of South Carolina, and upon such election the returns were duly transmitted to the said H. E. Hayne, as Secretary of State, in accordance with the provisions of the Constitution and laws of the State.

This allegation is admitted by respondents.

The petitioner alleges that the House of Representatives convened in the city of Columbia on the fourth Tuesday in November, and, after convening, duly organized and elected him, William H. Wallace, Speaker, and notified the Senate; that the petitioner, as such Speaker, thereupon demanded of the said H. E. Hayne, Secre-

tary of State, the returns of the election for Governor and Lieuten-
ant Governor; that the Secretary of State refused to deliver said
returns to the petitioner, and still refuses, and has unlawfully de-
livered said returns to one E. W. M. Mackey, claiming to be Speaker
of a body claiming to be a House of Representatives which is not
legally elected or organized; and petitioner prays that a writ of
*mandamus* issue directed to H. E. Hayne, as Secretary of State, and
E. W. M. Mackey, commanding and enjoining them forthwith to
deliver to the petitioner, as Speaker of the House of Representa-
tives, the returns of the Managers of Election transmitted to him
upon the election, and for further or other relief.

On this suggestion the Court granted an order that H. E. Hayne,
Secretary of State, and E. W. M. Mackey, show cause on the 4th
of December instant, why the prayer and suggestion of the petition
should not be granted.

The pleadings, evidence and arguments of the counsel having
been submitted to the Court, we now proceed to deliver our decision
and judgment.

As to the jurisdiction of the Court, the exercise of which has
been objected to on the part of the respondents, the Court feels no
doubt at all that it has power under the Constitution, Section 4 of
Article IV :

"The Supreme Court shall have appellate jurisdiction only in
cases of chancery, and shall constitute a Court for correction of
errors at law, under such regulations as the General Assembly may
by law prescribe: *Provided,* The Court shall always have power to
issue writs of injunction, *mandamus, quo warranto, habeas corpus,*
and such other original remedial writs as may be necessary to give
it a general supervisory control of all other Courts in the State."

Now, according to the view of the learned counsel for the respond-
ents, the power of the Court as to those writs, under Section 4,
Article IV, of the Constitution, is limited to control, by our super-
vision, over all other Courts in this State. The mere reading of
this Section is enough, I trust, to convince the learned counsel that
his interpretation of the Section is not well founded. The writ of
injunction may be exercised not to control other Courts, but it acts
directly upon parties, and no form of an injunction that I can think
of could prohibit the proceedings of a Court of inferior jurisdic-
tion. The great writ of *mandamus* stands upon a different footing.

It may be addressed to another Court; it may control the exercise of an assumed power by another Court, and, in that view, may be said to supervise. But *quo warranto* is never used in the supervision of another Court; it is directly an issue between two persons, both claiming an office. So, too, the great writ of *habeas corpus* mentioned in this Section. How can that writ issue to supervise or correct the errors of a Court of inferior jurisdiction? It is a great writ of privilege, interposing the shield of the law over the body of the prisoner. This great writ of right and liberty acts only upon the person, and never can act upon the Court. To show that the view which we entertain of the said Section is consistent with the end designed by the framers of the Constitution, and that the exercise of this power was to continue as it existed at common law at the time of the adoption of that instrument, they went further and gave to this Court the power to issue "such other original and remedial writs as may be necessary to give it general supervisory control." For instance, the writ of *certiorâri* and every other writ which was requisite to bring into this Court the proceedings of an inferior tribunal, that its action might be supervised by this Court. So much for the objection in that particular.

Then it is alleged that this Court has not jurisdiction over H. E. Hayne, one of the executive officers of the State, because, according to the limitations of the Constitution, the powers of the government are vested in three distinct bodies, neither one of which can exercise any control over another. That may be conceded to the fullest extent, and yet what would become of the rights of the citizen, vested in him not only by the common law but by the statutes, if there was no control over the executive department of the government? The Treasurer is a part of the executive department, and yet more than one case may be found where this Court has interposed to compel him to perform duties specially required of him by law. And so of the other officers. It is not an encroachment upon the duties of their particular departments. This Court does not undertake to say to them that "we are to perform the duties assigned by law to you." It does no more than say you must perform the specific duties assigned to you by law where you have not the privilege of exercising discretion; that is all. The *mandamus* could not compel the Governor to issue a pardon to a man; that would be an encroachment on his prerogative. But to say that the judicial department of the government, where a citi-

zen avers that his right has been infringed upon by an executive officer, could not interfere, as, for example, when the Legislature had appropriated a certain sum of money to be paid to him, and the Treasurer refuses, is startling. Where would the judiciary be? Where would the other departments be? The judiciary would sink into mere insignificance. The other departments might increase in bulk and wield their powers to such an extent that the whole liberties of the people might be entirely destroyed. The Court has previously decided this point in the same way. It was only out of respect to the learned counsel from abroad that it permitted it to be again argued.

The question is whether Mr. Wallace has established in this Court his right, by reason of holding under the Constitution the office of Speaker of the House of Representatives, to the possession of the returns of the election for Governor and Lieutenant Governor, filed with the Secretary of State. We do not feel it incumbent upon us either to inquire or determine if Mackey, one of the respondents in this case, is the Speaker of a legally-constituted House of Representatives of the State of South Carolina. We do not consider that inquiry necessary to the judgment demanded in this case. The Court holds that Mr. Wallace is the Speaker of a legally-constituted House of Representatives of South Carolina, and therefore has such a status here as not only authorizes but requires the Court to hear and determine the matters set forth in the suggestion. It has been made to appear, by evidence, that of the constitutional number, 124, of which the House shall consist, sixty-three members were in their seats when Mr. Wallace was elected. The constitutional requisition having been thus complied with, there was present the necessary "quorum to do business." This is no new question. It was decided by this Court on a day when everything was calm and serene; when the political atmosphere was pure; when there was no excitement in the country as unfortunately prevails now. In the case of *Morton, Bliss & Co.* vs. *The Comptroller General,* (reported in 4 S. C.,) it was held that to constitute a House of Representatives there must be a majority of the number which the Constitution requires to make a House, and that is 124, in the proportion of members to the respective Counties as fixed by the Constitution. Now it is contended that there was not sufficient evidence of the right to membership on the part of the gentlemen constituting the number of sixty-three to

· entitle them to the floor in the organization of the House. As we understand it, from the proof in the case, and it is conceded by the respondents, all the members had certificates from the Secretary of State except eight, and the qualifications of those eight were established by the proceedings in this Court. No matter what was the character of the certificates, they had the return of the Board of State Canvassers to this Court showing that they had received the greatest number of votes in their particular Counties, which entitled them to access to the floor for the purpose of organization.

· The return made to this Court by the Board of State Canvassers shows the name of every candidate in every County and the number of votes he received, and therefore the names of those who received the highest number in their respective Counties. The Court then required that the Board of State Canvassers should make a report in conformity to that return. Instead of performing that duty they adjourned *sine die,* possibly with the view in that way of avoiding the performance of the duty imposed upon them by the law, but more especially brought to their notice by the order of the highest Court of the State of South Carolina.

The law cannot be evaded in that way. We must at least preserve our civilization and maintain the due enforcement of the laws according to the judgment of those upon whom the Constitution has imposed the duty and responsibility of interpreting them. Unfortunately, in every case there will be differences of opinion; but we think that when a clearer day comes in the political horizon than the present, the whole people of South Carolina will unite in saying the law must be obeyed. Peace and prosperity can never be the reward of the people until every man knows that his first duty is not only to submit to the law but to lend his moral influence to their proper enforcement.

So much of the prayer of the petition as asks for a *mandamus* against Mr. Mackey must necessarily be dismissed. There cannot · be two Speakers of the House of Representatives in South Carolina, and Mr. Mackey stands in the position, so far as appears by the testimony and in the view of the Court, as a private citizen, against whom *mandamus* cannot issue.

In regard to Hayne, the Court considers that another important question is involved in it, and will order a further hearing at some future day.

It is therefore ordered and adjudged that the said W. H. Wallace is the legal Speaker of the lawfully-constituted House of Representatives of the State of South Carolina, and, as such officer, was and is entitled to the possession of the returns of the election for Governor and Lieutenant Governor held on the seventh day of November, A. D. 1876, and which were transmitted to H. E. Hayne, Secretary of State; but it appearing that the said election returns have been unlawfully delivered by said H. E. Hayne, Secretary of State, to E. W. M. Mackey, one of the respondents, the question is reserved for further argument and consideration whether the writ of *mandamus* should now issue to said H. E. Hayne, Secretary of State.

It is further ordered and adjudged that the petition be dismissed as to E. W. M. Mackey.

WILLARD, A. J. As this is a case of very great magnitude, it would be proper to enunciate briefly the propositions upon which I concur with the action of the Court. The Supreme Court has constitutional jurisdiction in cases of *mandamus;* our jurisdiction is original and general. We have so construed the Constitution repeatedly, without objection to that jurisdiction having been raised before at this bar, although we repeatedly affirmed that to be under our jurisdiction. *Mandamus* issues whenever a public officer is called upon to perform a ministerial act of a specific character, and, on demand, has refused its performance. The question then arises whether the Secretary of State and E. W. M. Mackey occupy that position. Are the duties they are called upon to perform ministerial? Are they specific? Have they been called upon to perform them, and have they refused the performance? And the additional question whether Mackey is a public officer.

There can be no question as to the character of the duty of the Secretary of State. He is ordered to do a specific thing—to deliver certain papers to a certain person invested with the office of Speaker of the House of Representatives; that is clearly a ministerial act. We have rightfully defined a ministerial act to be one proceeding from a duty to do something which an individual or corporation has a right to demand should be done. The Speaker of the House of Representatives has a clear right to demand that the Secretary of State should transmit to him the papers in question. The Secretary of State, being a public officer, charged with this specific

ministerial duty, is bound to perform it, and, refusing it, he may be compelled by *mandamus.* The question which is raised is, is Wallace Speaker of the House of Representatives? It seems that the body over which he presides had the constitutional majority, provided the members from Edgefield and Laurens Counties were entitled to seats in that body. This is indisputable. I am satisfied that the provision of the Constitution that the House of Representatives shall consist of one hundred and twenty-four members is mandatory, and the House cannot obtain a constitutional organization without having a majority of that specific number of members participating in the organization. The question as to whether the members from Edgefield and Laurens were entitled to seats was rightly understood by counsel as depending upon the jurisdiction of this Court in *mandamus.* If this Court had power to command the Board of State Canvassers to declare the election of those members from Edgefield and Laurens Counties, then we think they are to be regarded as members of the House of Representatives. We permitted counsel to argue the question of our jurisdiction, not because we had any doubt, or could conceive of a possible doubt, but because this is a case of great importance, and the Court wished to hear everything that could be said upon the subject. We have no doubt about our jurisdiction to confine the Board of Canvassers within the limits of their proper jurisdiction—to say what the jurisdiction of that body is. We do not claim, nor have we ever exercised, nor do we intend to exercise, the right to control the discretion of any executive officer or Board whatever, nor to interfere with their discretion. We determined that they had a mere ministerial duty to perform as regards members of the Legislature. The provision of the Constitution making each house the judge of the election returns and qualifications of its own members could leave nothing for the Board to do but the ministerial duty of certifying the results of the election as they appeared *prima facie,* and the Act of the Legislature itself has paid respect to the Constitution by withholding in terms from the Board of State Canvassers such powers when it is lodged in any other body. In the case under consideration it had been already lodged by the Constitution in the several houses of the General Assembly. The Court commanded that specific ministerial act to be performed. After the judgment was rendered from the bench, and before the writ of *mandamus* was issued, it

appears from proceedings in that case, which are before us, that the Board undertook to make certain declarations in violation of their duty under the judgment of this Court. Under familiar principles, that action was null and void and could give no legal foundation to any legal action whatever. The members of the Legislature were then in the same position as if the Board had refused to make any declaration whatever after having been commanded by this Court, and I presume that there is no lawyer who will give fair consideration to this matter who will doubt that if, after judgment pronounced, the Board had. refused to make any declaration whatever, it would have been competent for the members elected under the statement of the Board made to this Court to take their seats without any certificates whatever, inasmuch as their action was abortive when they disobeyed the order of the Court. Technical restrictions are never to be applied in the vital stages of the organization of such a body. Red tape can never be allowed to tie up the organic powers of the government. It would be to attempt to carry matters of form proper to the minor transactions of life into those great matters which cannot be hampered by such things. I am fully in accord with the Court that the body which contained the constitutional number was the House over which Wallace presides. The one presided over by Mackey has no legal status whatever. Mackey is a private citizen and is subject to arrest and punishment. The criminal Courts of the country furnish the means of punishment. As to the Secretary of State, I fully concur in the views of the Court that the question whether a *mandamus* can go to him after he has parted with the papers should be fully argued at the bar.

WRIGHT, A. J. I fully concur with my associates in all that they have said. I have just remarked to the Chief Justice that it was not necessary for me to say a word, inasmuch as he and my other associate have better expressed my views than I am competent to do. The whole point in this case is whether or not five persons from Edgefield and three from Laurens had a *prima facie* right to take their seats and participate in the organization of the General Assembly of South Carolina. In looking, a moment ago, at the statutes under which the State Board of Canvassers are directed to act, I find the 24th Section, which is one of the Sections which defines their powers and duties, reads thus: "The Board, when thus

formed, shall, upon the certified copies of the statements made by the Board of County Canvassers, proceed to make a statement of the whole number of votes given at such election for the various officers and for each of them voted for, distinguishing the several Counties in which they were given. They shall certify such statement to be correct, and subscribe the same with their proper names."

That was an indisputable duty devolved upon the Board of State Canvassers. It is evident that they did not perform that duty, inasmuch as they assumed to throw out two Counties in the State and to leave the people of those Counties unrepresented in the organization of the House of Representatives.

Now, was there, or is there, any remedy or redress for the citizens of Edgefield and Laurens Counties? This statute provides that the Board of County Canvassers shall file certified copies of their statements in the office of the Clerk of the Court for each County, also with the Governor, Comptroller General and the Secretary of State. I regard that as a wise provision of the law, for the simple reason (if it can be called simple) that if the Board of State Canvassers could throw out a County or Counties, and declare that those Counties shall have no representation, that there is a way by which you can tell who received the highest number of votes.

Now, I presume the object of the government is, or should be, the protection and representation of the people. If a body of men, acting as a Board of State Canvassers, have the right to throw out one County and thus defeat its representation, they can throw out one-half or all of the Counties in the State and defeat an entire election. Consequently, I take it that those eight men had a right to participate in the organization of the House of Representatives. That being the fact, it was impossible for the other so-called House to have the requisite constitutional majority. So far as regards the other case, I fully concur with my associates that it is a very important and grave question and should be fully argued by counsel. It has not yet been argued at all.